# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROGER J. STONE, JR
1045 NE 13th Ave, Apt 101
Fort Lauderdale, FL 33304

DRAKE VENTURES, LLC
1045 NE 13th Ave, Apt 101
Fort Lauderdale, FL 33304

Civil Case No. _____

                    Plaintiffs,

        v.

ADAM B. SCHIFF, in his official
capacity as a member of the United States House of
Representatives
Rayburn House Office Building, Suite 2309
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-4176

and

NANCY PELOSI, in her official capacity as
Speaker of the United States House of
Representatives.
Office of the Speaker.
The U.S. Capitol. Suite H-232,
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-0100

and


BENNIE G. THOMPSON, in his official capacity as
Chair of the Select Committee to Investigate the
January 6th Attack on the United States Capitol.
Rayburn House Office Building Suite 2466
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-5876

and

ELIZABETH L. CHENEY, in her official capacity as
a member of the United States House of
Representatives.
Cannon House Office Building, Suite 416
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-2311

and

JAMIE B. RASKIN, in his official capacity as a
member of the United States House of
Representatives;
Rayburn House Office Building, Suite 2242
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-5341

and

SUSAN E. LOFGREN, in her official capacity as a
member of the United States House of Representatives
Longworth House Office Building, Suite 1401
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-3072

and

ELAINE G. LURIA, in her official capacity as a
member of the United States House of
Representatives.
Cannon House Office Building, Suite 412
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-4215

and

PETER R. AGUILAR, in his official capacity as a
member of the United States House of Representatives
Cannon House Office Building, Suite 109
U.S. House of Representatives Washington, D.C.
20515

Telephone: (202) 225-3201

and

STEPHANIE MURPHY, in her official capacity as a
member of the United States House of Representatives
Longworth House Office Building, Suite 1710
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-4305

and

ADAM D. KINZINGER, in his official capacity as a
member of the United States House of
Representatives.
Rayburn House Office Building, Suite 3635
U.S. House of Representatives Washington, D.C.
20515
Telephone: (202) 225-3201

and

SELECT COMMITTEE TO INVESTIGATE THE
JANUARY 6TH ATTACK ON THE UNITED
STATES CAPITOL
Longworth House Office Building
Washington, DC 20515
Telephone: (202) 225-7800

and

AT&T MOBILITY, INC.
General Counsel and Executive
Vice President
1025 Lenox Park Blvd NE
Atlanta, GA 30319
Telephone: (888) 722-1787

                    Defendants

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AGAINST UNLAWFUL SUBPOENA FOR PLAINTIFF'S TELEPHONE RECORDS**

Plaintiff Roger J. Stone, Jr. at all times relevant herein is a private citizen and a resident of Fort Lauderdale, Florida.  Plaintiff Drake Ventures, LLC is a private limited liability company domiciled in Delaware with its principal place of business in Fort Lauderdale, FL.  They  sue for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure ("FRCP") and 28 U.S.C. §2201, *et seq.*, for an injunction and pursuant to 18  U.S.C. § 2702, against the Congressional Defendants for issuing an unlawful and overbroad subpoena to Defendant AT&T for Plaintiffs' telephone records and against Defendant AT&T to enjoin them from turning over the phone records to the Congressional Defendants in violation of the Stored Communications Act and the First and Fourth Amendments.

## INTRODUCTION

1.  **PLAINTIFF  ROGER  J.  STONE,  JR.** (hereinafter  "Stone"),  is  a  well-known conservative political pundit and consultant. Stone has appeared at hundreds, if not thousands of political rallies with millions of participants. Not a single one turned violent.

2.  Stone was not at the Ellipse Rally on January 6, 2021, at which President Donald J. Trump spoke.  In fact, Stone never left the grounds of his hotel on January 6, 2021, with the exception of going to the airport that evening

3.  **PLAINTIFF  DRAKE  VENTURES,  LLC.**, (hereinafter  "Drake")  is  a  limited  liability company through which Stone provides consulting services.  Drake has two members, Roger Stone & Nydia Stone.

4.  On or about February 10, 2022, Stone through Drake received a notice from AT&T that the Select Committee had subpoenaed AT&T for nine categories of information associated with

Stone's personal cell phone number, including IP addresses, devices, billing addresses, account changes, a list of contacts, call session times, and dozens to hundreds of other data points or metadata from November 1, 2020 (three days *before* the election and around five days before the outcome of the election was known) to January 31, 2021 and which did not contain any provision for protection of attorney client privilege Stone may have with his counsel or other information protected by the First and Fourth Amendments. See Exhibit 1.

5.   The AT&T notice further stated that unless AT&T receives a court document challenging the subpoena by February 22, 2022, AT&T is compelled to comply with the subpoena

6.   On February 21, 2022, Stone and Drake, through his counsel, via facsimile, sent AT&T a letter requesting a courtesy extension of time to consult with Plaintiffs and copied the Select Committee staff counsel.  See Exhibit 2.

7.   On February 21, 2022, Senior Investigative Counsel for the Select Committee called undersigned counsel, Smith and offered an extension until February 25, 2022.

8.   On February 21, 2022, a representative from AT&T emailed counsel for Stone and Drake and stated that they had received communication from the counsel to the Select Committee and agreed to an extension for Stone and Drake to file such a suit or to join an existing one by February 25, 2022.

9.   On information and belief, AT&T has sent similar communications to dozens of subscribers and is continuing to send to other subscribers, subpoenas from the Select Committee similar to the one Stone and Drake received in all material respects and who similarly object to the invasion of their privacy but do not have the resources to file a court action challenging the subpoena's validity on the grounds that Select Committee is unlawfully constituted and that in any event, the production of cell phone records to the Select Committee violate the Stored

Communications Act and the First and Fourth Amendment.

10. The data sought is not pertinent to the investigation and sweeps up privileged communications between Stone and clergy and Stone and his respective attorneys.

## PARTIES

11. Plaintiff Roger J. Stone, Jr. at all times relevant herein is a private citizen and a resident of Fort Lauderdale, Florida.

12. Drake Ventures, LLC is a private limited liability company domiciled in Delaware with its principal place of business in Fort Lauderdale, FL.

13. Defendant Nancy Pelosi ("Speaker Pelosi") is a Democrat member of the U.S. House of Representatives and Speaker of the House.

14. Defendant Bennie G. Thompson ("Chairman Thompson") is a Democrat member of the U.S. House of Representatives and Chairman of the Select Committee to Investigate the January 6th Attack on the United States Capitol. Subpoenas challenged herein were issued with his authority as Chair.

15. Defendant Elizabeth L. Cheney is a Republican member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

16. Defendant Adam B. Schiff is a Democrat member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

17. Defendant Jamie B. Raskin is a Democrat member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

18. Defendant Susan E. Lofgren is a Democrat member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

19. Defendant Elaine G. Luria is a Democrat member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol

20. Defendant Peter R. Aguilar is a Democrat member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

21. Defendant Stephanie Murphy is a Democrat member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

22. Defendant Adam D. Kinzinger is a Republican member of the U.S. House of Representatives and members of the Select Committee to Investigate the January 6th Attack on the United States Capitol.

23. Defendant Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee") is a select committee created by House Resolution 503 ("H. Res. 503") passed by the U.S. House of Representatives on June 30, 2021.

24. Defendant AT&T MOBILITY, INC. has been subpoenaed to provide subscriber data about Stone and Drake to the Select Committee in its role as providing telecommunications services to its "subscriber" (customer or user) Mr. Stone and Drake.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1331, because this

action arises under the Constitution and laws of the United States.

26. This Court has personal jurisdiction over Speaker Pelosi because she sponsored H. Res. 503 and oversaw its passage in the House. She also approved and ratified the issuance of the Stone and AT&T Subpoenas from Washington, D.C.

27. This Court has personal jurisdiction over Chairman Thompson because he presides over the Select Committee and issued the Stone and AT&T Subpoena from his office address in Washington, D.C.

28. This court has personal jurisdiction over Elizabeth L. Cheney, Adam B. Schiff, Jamie B. Raskin, Susan E. Lofgren, Elaine G. Luria, Peter R. Aguilar, Stephanie Murphy, Adam D. Kinzinger because they serve as members of the Select Committee that issued the Stone and AT&T Subpoenas from Washington, D.C.

29. This Court has personal jurisdiction over the Select Committee because it is located and operates in Washington, D.C. Mr. Stone was compelled to appear there, in-person, without the option of secure remote video options afforded to Members of the Select Committee, during the pandemic.

30. This Court has personal jurisdiction over the AT&T Defendant because it operates continuously and generally in the District of Columbia, including but not limited to installation and operation of physical technical equipment such as cell towers for the conduct of telecommunication services to subscribers like Drake and Mr. Stone. The AT&T Defendants knew that they might be held to answer in the District of Columbia including but not limited to their business goals and promises of providing telecommunication services to subscribers throughout the country.

31. Venue is proper under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in Washington, DC.

**COUNT I: THE AT&T SUBPOENA IS NOT VALIDLY ISSUED BY A DULY AUTHORIZED COMMITTEE AND THUS WAS *ULTRA VIRES*.**

32. The composition of the House Select Committee to Investigate the January 6th Attack on the United States Capitol is governed by Section 2 of H. Res. 503. Section 2(a) states "Appointment Of Members.—The Speaker shall appoint 13 Members to the Select Committee, 5 of whom shall be appointed after consultation with the minority leader." H. Res. 503 117th Cong. (2021).

33. Speaker Pelosi has appointed only nine members to the Select Committee: seven Democrats and two Republicans. None of these members was appointed from the selection of five GOP Congresspersons put forth by Republican Minority Leader Kevin McCarthy.

34. Authorized congressional committees have subpoena authority implied by Article I of the Constitution. *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927). The Select Committee, however, is not an authorized congressional committee because it fails to comport with its own authorizing resolution, House Resolution 503.

35. Congress' failure to act in accordance with its own rules is judicially cognizable. *Yellin v. United States*, 374 U.S. 109, 114 (1963). This is particularly significant where a person's fundamental rights are involved.

36. Speaker Pelosi failed to appoint members consistent with the authorizing resolution of the Select Committee. Pelosi has appointed only nine members of Congress to serve on the Select Committee; whereas the authorizing resolution instructs the Speaker "shall" appoint thirteen members. H. Res. 503 § 2(a), 117th Cong. (2021).

37. Further, of those nine members Speaker Pelosi has appointed, none of them was appointed after consultation with the minority member, as is required by the authorizing resolution. H. Res. 503 § 2(a), 117th Cong. (2021).

38. Thus, the Select Committee as it currently stands—and stood at the time it issued the AT&T subpoena in question—has no authority to conduct business because it is not a duly constituted Select Committee. Chairman Thompson's subpoenas are invalid and unenforceable.

**COUNT II: THE AT&T SUBPOENA IS OVERLY BROAD AND BEYOND THE SCOPE OF THE COMMITTEE'S JURISDICTION.**

39. H. Res. 503 was voted along partisan lines and is overly broad, addressing even the coronavirus pandemic, but it is not unlimited in scope. The AT&T Subpoena dates are a violation of the authorizing resolution that created the Select Committee.

40. H. Res. 503 establishes three "functions" of the Select Committee: (1) to "investigate the facts, circumstances, and causes relating to the domestic terrorist attack on the Capitol"; (2) to "identify, review, and evaluate the causes of and the lessons learned from the domestic terrorist attack on the Capitol"; and (3) to "issue a final report to the House containing such findings, conclusions, and recommendations for corrective measures described in subsection (c) as it may deem necessary."

41. Subsection (c) of Section 4 describes three categories of "corrective measures": "changes in law, policy, procedures, rules, or regulations that could be taken" (1) "to prevent future acts of violence, domestic terrorism, and domestic violent extremism, including acts targeted at American democratic institutions"; (2) "to improve the security posture of the United States Capitol Complex while preserving accessibility of the Capitol Complex for all Americans"; and (3) "to strengthen the security and resilience of the United States and American

democratic  institutions against violence, domestic terrorism, and domestic violent extremism."

42. In August, the Select Committee demanded records from fifteen different social media companies, including Facebook, Reddit, Twitter, and YouTube. *See* Press Release, Bennie  G. Thompson, Chairman, Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, Select Committee Demands Records related to January 6th Attack from Social Media Companies (Aug. 27, 2021). The subpoenas directed these companies to produce all internal company policies and actions taken relating to "misinformation" about the 2020 election, efforts to interfere with the 2020 election or electoral results, violent domestic extremists, foreign interference with the 2020 election, and more.

43. The Select Committee has also issued preservation of records orders and subpoenas to major banking corporations and telecommunication companies. Witnesses are treated as targets and receive no notice from the Select Committee or many of these services that hundreds of millions of Americans used to participate in both commerce and the marketplace of ideas.

44. The AT&T subpoena issued by the Select Committee on February 9, 2022, instructs AT&T to produce subscriber information and mobile phone data associated with Stone's personal mobile phone number. See Exhibit 1. The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, and other metadata. The mobile phone data requested could include all calls, text messages, and other records of communications associated with that phone number. This data can be used for historic mobile site analysis. The AT&T subpoena requested all of Mr. Stone's personal mobile phone data for three months: from November 1, 2020, and January 31, 2021.

45. The breadth and invasiveness of the AT&T subpoena also gives the appearance of a

criminal investigation, not a legislative fact-finding mission. It seeks private data used to track an individual person's communications and location, information that would bear on an investigation into that individual, not on potential legislation to be passed by Congress. It also requests this data for a period more than two months prior to January 6, and indeed *several days before the November 3 election*, the ostensible focus of the Select Committee's supposed legislative recommendations.

## COUNT III: THE AT&T SUBPOENA VIOLATES THE FOURTH AMENDMENT

46. The AT&T Subpoena instructs AT&T to produce subscriber information and mobile phone data associated with the phone number(s) used by Mr. Stone.

47. The subscriber information requested includes subscriber names and contact information, authorized users, time of service provided, account changes, associated IP addresses, session times, and other metadata.

48. The mobile phone data requested includes all calls, text messages, and other records of communications associated with that phone number.

49. This data can be used for historic mobile site analysis.

50. The requested data arbitrarily covers four full months: November 1, 2020 through January 31, 2021.

51. Mr. Stone has a reasonable expectation of privacy in his personal mobile phone and data. He remains a private citizen who has never served in government. He has reasonable expectations of privacy and is under no required record keeping regulations like government officials or government employees.

52. The Fourth Amendment enumerates the right of private individuals to be free from unreasonable search and seizure by the government into their persons, houses, papers, and

effects.  It also protects a person's reasonable privacy expectations. *Katz v. United States*, 389 U.S. 347, 351 (1967).

53. The fact that a third party at least temporarily stores a person's mobile phone data does not alter his expectation or its reasonableness. *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018).

54. The Fourth Amendment restricts the ability of the Select Committee to issue sweeping subpoenas untethered from any valid legislative purpose. See *Oklahoma Press Pub. Co.   v. Walling*, 327 U.S. 186, 196 (1946).

55. If the government, including the Select Committee, seeks to obtain documents or data protected by the Fourth Amendment, it must be obtained by consent or otherwise authorized by law. Neither Mr. Stone nor Drake has provided his consent for AT&T to produce his mobile phone data to the Select Committee. And for the reasons discussed *infra*, the Select Committee's subpoenas are invalid.

56. A congressional subpoena must be reasonable. An all-encompassing subpoena for personal, nonofficial documents falls outside the scope of Congress' legitimate legislative power. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2040 (2020).

57. The Select Committee's subpoena to both AT&T and Mr. Stone are so broad and indefinite as to exceed the lawfully authorized purpose of the Select Committee. *See McPhaul v. United States*, 364 U.S. 372, 381 (1960). The subpoena to AT&T, in particular, contains no limitations seeking to preserve applicable privileges or prevent violations of constitutional rights.

58. For the Select Committee to subpoena AT&T for all Mr. Stone's personal mobile phone data over the course of three months is entirely unreasonable. Such a request is so broad both temporally and with respect to the collected data, that the Select Committee exceeds any lawfully

authorized purpose.

59. As the subpoena in question exceeds the lawfully authorized purpose of the Select Committee, full compliance with such subpoenas would violate Mr. Stone's Fourth Amendment protection against unlawful search and seizure. The subpoena is thus invalid and unenforceable.

**COUNT IV: THE SELECT COMMITTEE IS A FEDERAL GOVERNMENT BODY ACTIVELY ABRIDGING MR. STONE'S FIRST AMENDMENT RIGHTS AND SETTING A CHILLING EFFECT ON THOSE RIGHTS**

60. Stone understands that this court must work to balance the competing interests between individual privacy and public interests.

61. There cannot be public interests—none that have a legislative remedy that would prevent a future attack at the Capitol—in probing Stone's interactions post January 6th.

62. That is a duty not reserved for Congress. *See, e.,g. Barenblatt v. United States*, 360 U.S. 109, 112 (1959), *Watkins v. United States*, 354 U.S. 178, 197 (1957), *Gibson v. Florida Legislative Investigation Comm*., 372 U.S. 539 (1963).

63. Because the Select Committee is issuing subpoenas for third-party information, and without notice, there is no one to contest or object (rights afforded to witnesses producing documents and testimony) on the grounds of pertinency and forcing the Select Committee, as it is constitutionally required to do (*Deutch v. United States*, 367 U.S. 456, 467-68 (1961)), to establish a nexus between the information sought and a subject of overriding and compelling public interest.

64. The Select Committee has not provided clarity in what or why they're seeking broad phone records. The opportunity to request clarity and object is established precedent (*Watkins*, 354 U.S. at 214-15).

65. Some colleagues, business prospects, former clients, and associates have not spoken to

Mr. Stone or ceased communication with him because of public reports that his phone records would be obtained. This has harmed his ability to effectively exercise his First Amendment rights and conduct his business.

66. Mr. Stone used his personal mobile device to engage in protected advocacy and other speech, including privileged speech with his attorney(s) and clergy.

67. All of these associational and expressive activities are protected by the First Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 64 (1976); *Black Panther Party v. Smith*, 661 F.2d 1243, 1267 (D.C. Cir. 1981); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Fed. Election Comm'n*, 333 F.3d 168, 179 (D.C. Cir. 2003); *NAACP v. Alabama*, 357 U.S. 440 (1958).

68. The information sought from AT&T by the Select Committee would also intrude on Stone's rights to freedom of association as protected by the First Amendment of the U.S. Constitution. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 462 (1958).

69. Stone's First Amendment rights and future 2022 & 2024 election cycle activities are and will be injured by Committee's far-reaching general warrant a/k/a AT&T Subpoena.

70. There was no evidence suggesting that Plaintiff, and upon information and belief there is no evidence from any witness, participated in or planned to organize an attack on the Capitol. There was no evidence suggesting that Plaintiff, and upon information and belief there is no evidence from any witness, participated in or planned to organize an attack on the Capitol. In fact, senior FBI officials have testified that their investigation found no criminal wrongdoing on the speakers and organizers, such as Plaintiff, and their respective organizations. *See* https://www.reuters.com/world/us/exclusive-fbi-finds-scant-evidence-us-capitol-attack-was-coordinated-sources-2021-08-20/

71. The Select Committee is probing Plaintiff because of his political beliefs and work

covered by the First Amendment. The Committee should be very deliberate and precise about inquiries as Plaintiff has already experienced a chilling effect on his First Amendment activities (losing work and closing a bank account due to the Committee's inquiries). Sweeping up communications from whole periods of time, and leaking that to the press, further injures Plaintiff's First Amendment activities.

72. There is no reason to believe that the full record of personal and political contacts of each Plaintiff, extending for nearly two months before January 6th (long before it was even a remote possibility) and continuing for a month afterwards, is necessary to supplement their fulsome explanation of the events of January 6th and preceding to it.

73. Instead, the Select Committee's Subpoena will yield data that will be used to populate a massive database of the personal friends and political associates of not just Plaintiffs, but everyone who has had any connection with the belief in election integrity, government skepticism, other political associations or vendors who worked with Plaintiff. By analyzing data patterns in phone numbers, call session times, text messages, and geolocation data, investigators can build a permanent nationwide model of intimate political associations and networks within the conservative movement that has relevance

74. Such phone database It is far beyond "legislating" to deal with Capitol security or preventing another breach of the Capitol or any other federal building such as the Supreme Court where pro-abortion activists charged the Supreme Court building last Spring and where Senator Schumer, on the steps of the Supreme Court, while it was hearing an abortion case, threatened Justices Kavanaugh and Gorsuch by turning to the Court and shouted, "you won't know what hit you" if the Justices ruled against the pro- abortion position. *See* National Review, *"Schumer to Gorsuch and Kavanaugh: Nice Little Court Ya Got There, Hate to See Anything Happen to It …"*

(March 5, 2020). *See* https://www.nationalreview.com/2020/03/chuck-schumer-attack-on-supreme-court-despicable/

75. The billions of data points yielded can recreate not just intimate relationships, but also locations and movements, creating a virtual CAT-scan of the Select Committee's political opposition, likely, as reported, including even their own colleagues in the House of Representatives.

76. It is significant that the AT&T Subpoena uniformly asks for three months of phone records for a large number of people, some of whom touch upon the Committee's inquiry for only a few days. The AT&T Subpoena asks for data predating the origin of the idea of the January 6th event by a month and a half.

77. Plaintiff's personal account information, and the complete record of his private phone and text contacts with all of their political and personal acquaintances for three months, is not pertinent to any inquiry into what happened on January 6, or its causes. Instead, it is an impermissible attempt to harass the Plaintiffs, identify their close colleagues, and potentially subject even those individuals and their carriers to subpoenas. Not only does this chill communication among these friends and political associates, it builds an opposition research file for the 2022 and 2024 election cycle for the single party that comprises, staffs, and controls the Select Committee.

78. Plaintiff has already experienced financial losses, opportunity losses, and other sufferings related to his 2022 and 2024 election work because of the Committee's extended non-January 6th probe into his work.

79. Even if it had a valid reason to seek protected information, the Select Committee has put in place no safeguards to protect Mr. Stone's rights.

80. The Select Committee has a well-documented history of leaking to at least one news outlet in particular. That news outlet has been hostile to Mr. Stone and is privy to documents the public does not have access to. The distribution of committee materials or characterizing them is prohibited for staff or Members to do by law.

81. The AT&T subpoena is also a clear effort to chill the speech of the Select Committee Members' political adversaries.

82. Mr. Stone is a prominent political pundit and consultant; an unelected Republican who has never sought governmental office.

83. Mr. Stone reasonably fears this is payback for his beliefs and lawful campaign activity that is being lumped in with illegal acts; and before a body that is not permitted to do either such thing.

84. Allowing an entirely partisan select committee of Congress to subpoena the personal mobile phone data of prominent activists and legal permit holders would have a massive chilling effect on current and future activists' associational and free speech rights.

85. Danielle Brian, the Chair of the Project on Government Oversight (POGO) submitted a letter to Committee Chairman Thompson on October 5, 2021, expressing grave concerns about the subpoenas impact on First Amendment freedoms,, stating in part:

> Indeed, we at POGO were the subject of overreaching subpoenas in the 1990s, including subpoenas for my home phone records, in an effort to identify whistleblowers who had exposed the oil and gas industry's fraud in underpaying royalties.[5]
>
> If similar efforts to target and malign government critics or marginalized communities are attempted in the future, it is vital they cannot weaponize the vast array of private digital information that exists in modern society, or collect such information to harm or chill expression by religious minorities, political dissidents, or whistleblowers. The actions the committee takes in the coming weeks may set important precedent for how congressional demands for records are used going forward.

https://www.pogo.org/letter/2021/10/letter-to-january-6-committee-supporting-careful-use-of-subpoena-authority/

86. The Select Committee's asserted interest is insufficient and its alternative means of obtaining this information are too obvious to justify such a drastic chilling of speech.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask the Court to enter judgment in their favor and against Defendants and to order the following relief:

    a.   A declaratory judgment that the AT&T Subpoena is ultra vires, unlawful, and unenforceable;

    b.   A declaratory judgment that the AT&T Subpoena, in part or in whole, serves no valid legislative purpose and exceeds the Select Committee's Constitutional authority;

    c.   A declaratory judgment that compliance with the AT&T Subpoena would violate the Stored Communications Act;

    d.   A declaratory judgment that the AT&T Subpoena violates Mr. Stone's Fourth Amendment rights;

    e.   A declaratory judgment that the AT&T Subpoena violates Mr. Stone's First Amendment and Due Process rights;

    f.   An injunction prohibiting AT&T from producing any phone data to the Select Committee and that any data submitted be returned to the Plaintiff if produced.

    g.   An injunction prohibiting the Committee from using any phone data submitted by AT&T the Select Committee and that any data submitted be returned to the

Plaintiff if produced or destroyed.

h.  In the alternative, an order modifying the AT&T Subpoena to seek only unprivileged information, in a specified date range (ex. January 1, 2021 09:00 AM to January 6, 2021 18:00 PM), that does not infringe on Mr.  Stone's constitutional rights;

i.  An injunction quashing the AT&T Subpoena and prohibiting their enforcement by Defendants;

j.  An injunction prohibiting Defendants from imposing sanctions for noncompliance with the AT&T Subpoena;

k.  An injunction prohibiting Defendants from inspecting, using, maintaining, or disclosing any information obtained as a result of  the AT&T Subpoena;

l.  An award in favor of Plaintiffs for his reasonable expenses, including attorneys' fees and costs, incurred as a result of the AT&T Subpoena;  and

m.  Any and all other relief that the Court deems just and proper.

Dated:  February 24, 2022

Respectfully submitted,

ROGER J. STONE, JR.
DRAKE VENTURES, LLC,
*By undersigned counsel*

*/s/Robert C. Buschel*
Robert C. Buschel
*Counsel of Record*
(DDC Bar No. FL-39)
Buschel Gibbons , P.A.
501 E. Las Olas Blvd., Third Floor
Fort Lauderdale, FL 33301
(954) 530-5301
Buschel@BGlaw-pa.com

*/s/Grant J. Smith*
(DDC Bar No. FL-36)
StrategySmith, P.A.
401 East Las Olas Boulevard
Suite 130-120
Fort Lauderdale, FL 33301
(954) 328-9064
gsmith@strategysmith.com