# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ROGER J. STONE, JR et al.,                )
                                          )
         *Plaintiffs*,                    )
                                          )
     v.                                   )          Case No. 1:22-CV-00492-CJN
                                          )
ADAM B. SCHIFF et al.,                    )
                                          )
         *Defendants.*                    )
                                          )
_____ )


## **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

I.      The Select Committee Is Properly Composed .................................................... 1

II.     The Subpoena to AT&T Serves a Valid Legislative Purpose............................. 4

III.    The Subpoena to AT&T Does Not Violate the Fourth Amendment ................... 6

IV.     The Subpoena to AT&T Does Not Violate Either the Stored Communication Act,
        10 U.S.C. § 1039(b), or 47 U.S.C. § 222(c)(1)................................................... 6

V.      The Subpoena to AT&T Does Not Violate the First Amendment....................... 9

CONCLUSION................................................................................................................... 9

**TABLE OF AUTHORITIES**

**Cases**

*Barenblatt v. United States*,
    360 U.S. 109 (1959) ............................................................................................7

*Carpenter v. United States*,
    138 S. Ct. 2206 (2018) ........................................................................................6

*Digit. Realty Tr., Inc. v. Somers*,
    138 S. Ct. 767 (2018) ..........................................................................................7

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975) ............................................................................................5

*English v. Trump*,
    279 F. Supp. 3d 307 (D.D.C. 2018).....................................................................4

*Gutierrez de Martinez v. Lamagno*,
    515 U.S. 417 (1995) ............................................................................................4

*Hamilton v. United States*,
    502 F. Supp. 3d 266 (D.D.C. 2020).....................................................................8

*Hubbard v. United States*,
    514 U.S. 695 (1995) ............................................................................................7

*McGrain v. Daugherty*,
    273 U.S. 135 (1927) .........................................................................................6, 7

*McPhaul v. United States*,
    364 U.S. 372 (1960) .........................................................................................5, 6

*New York v. United States*,
    505 U.S 144 (1992) ............................................................................................6

*NFIB v. Sebelius*,
    567 U.S. 519 (2012) ............................................................................................6

*\*Republican Nat'l Comm. ("RNC") v. Pelosi*,
    --- F. Supp. 3d ---, 2022 WL 1294509 (D.D.C.) ......................................2, 3, 4, 5

*Trump v. Mazars USA, LLP*,
    140 S. Ct. 2019 (2020) ........................................................................................6

*\*United States v. Bannon*,
    No. 21-670 (D.D.C.)............................................................................................2

*United States v. Durenberger*,
 48 F.3d 1239 (D.C. Cir. 1995) ............................................................................4

*United States v. Rostenkowski*,
 59 F.3d 1291 (D.C. Cir. 1995) ........................................................................3, 4

**Statutes**

18 U.S.C. § 1001 ...................................................................................................7, 8

18 U.S.C. § 1039 ...................................................................................................8, 9

18 U.S.C. § 2711 ......................................................................................................7

47 U.S.C. § 222 .....................................................................................................7, 9

**Legislative & Constitutional Authorities**

167 Cong. Rec. E1151 (daily ed. Oct. 27, 2021) ......................................................5

167 Cong. Rec. H5759 (daily ed. Oct. 21, 2021) .....................................................6

H. Res. 503, 117th Cong. (2021) ....................................................................1, 4, 5

Tel. Recs. & Priv. Prot. Act of 2006, Pub. L. No. 109-476, 120 Stat. 3568 .............8

U.S. Const., Art. I, § 5, cl. 2 .....................................................................................2

**Other Sources**

Aaron R. Cooper, *Congressional Surveillance*, 70 Am. U. L. Rev. 1799 (2021) .......8

**INTRODUCTION**

Plaintiffs Roger Stone and Drake Ventures LLC insist (Opp. 1-4) (ECF No. 22) that Mr. Stone's efforts to undermine the 2020 presidential election results, while "distasteful to some," *id.* at 1, were protected by the First Amendment. But that is mere misdirection. The Select Committee does not seek to (nor does it have the ability to) punish Mr. Stone for his "speech." The Select Committee seeks only to obtain information about the root causes of the January 6th attack so that it may take action to safeguard our democracy and prevent another such attack. Reports of Mr. Stone's activities in the wake of the presidential election provide an ample basis for the Select Committee to investigate his role, consistent with its mission to "investigate and report upon the facts, circumstances, and causes relating to the January 6" attack. H. Res. 503, 117th Cong. § 3(1) (2021). Plaintiffs provide no basis to doubt the legality of the Select Committee's subpoena to AT&T, and their Complaint should be dismissed.[1]

**ARGUMENT**

**I.      The Select Committee Is Properly Composed**

Plaintiffs ask this Court (Opp. 4-9) to hold that the subpoena by the Select Committee to AT&T is invalid because (according to them) the Select Committee is improperly composed. But they cite no case, and Congressional Defendants are aware of none, establishing that a plaintiff can collaterally attack in a civil suit a Congressional subpoena issued to another entity because the plaintiff alleges defects in the committee's composition. Furthermore, the Rulemaking Clause of the Constitution bars federal courts from considering Plaintiffs' claims

---

[1] Plaintiffs' brief is nearly identical to the brief submitted to this Court by Ali Alexander and Christine Torre in opposition to the Select Committee's motion to dismiss their complaint. *See* Pls.' Mem. in Opp., to Congressional Defendants' Mot. to Dismiss, *Alexander v. Pelosi*, No. 21-3308 (D.D.C. June 28, 2022), ECF No. 25. Congressional Defendants' reply, in turn, hews closely to the reply brief submitted in *Alexander*, *mutatis mutandis*.

about the Select Committee's internal operations.  *See* U.S. Const., Art. I, § 5, cl. 2.  Plaintiffs contend incorrectly that "[t]he Congressional Defendants in their Memorandum in Support of Motion to Dismiss this action have not even raised the separation of powers issue"; in fact, that argument is a key component of our motion to dismiss.  Opp. 8; *see* Mot. 9, 13 (ECF No. 18) (discussing application of the Rulemaking Clause).

None of the cases on which Plaintiffs rely to avoid the Rulemaking Clause (Opp. 5-6) is relevant here.  Each involved an appeal from a criminal conviction for contempt of Congress.  Here, Plaintiffs invoke the House Rules not as a shield in a criminal proceeding, but as a sword to attack, in a civil proceeding, a subpoena issued to a third party.  The cases Plaintiffs cite do not stand for the proposition that a plaintiff can collaterally attack a subpoena issued to a third party when that plaintiff contends that Congress failed to follow its own rules.  Furthermore, in those cases, the relevant Congressional committees did not challenge the witnesses' interpretation of the committee's rules; the committees assumed that those rules had indeed been violated.  The courts therefore had no occasion to defer to the relevant Congressional committees' interpretation of their own rules, or the House's ratification of such interpretations.

As Plaintiffs note (Opp. 6-7), both Judge Kelly in *Republican Nat'l Comm. ("RNC") v. Pelosi*, --- F. Supp. 3d ---, 2022 WL 1294509, at *15 (D.D.C. May 1, 2022), *appeal pending*, No. 22-5123 (D.C. Cir.), and this Court in *United States v. Bannon*, have rejected the argument they press.  Mot. Hr'g Tr. at 113:17-114:14, No. 21-670 (D.D.C. June 15, 2022).  Indeed, no judge has ruled in their favor—and, as we noted in our opening brief (Mot. 14 n.31), two other judges have likewise rejected their claims.

Plaintiffs make four arguments (Opp. 7-9) for why this Court should not follow Judge Kelly's reasoning in *RNC* and this Court's own reasoning in *Bannon*.  None is convincing.

*First*, Plaintiffs note that the ruling in *RNC* has been stayed pending appeal and ask this Court to "hold in abeyance its ruling in the instant case pending disposition of the appeal in *RNC*." Opp. 7. But if courts held rulings in abeyance whenever one issue was on appeal in another case, the judicial process would be frequently and unreasonably delayed. Plaintiffs provide no reason why this Court should not adjudicate the issue in an ordinary and timely manner. Plaintiffs have not sought from this Court a preliminary injunction indefinitely delaying the resolution of this matter, and—were they to do so—they would fail under that standard.

*Second*, Plaintiffs argue that, "unlike the subpoena in *Bannon,* the AT&T subpoenas have **not** been 'ratified' by the full House." Opp. 7 (emphasis in original). This argument misses the mark. The point is not that the full House endorsed a *specific* subpoena, but rather that, as Judge Kelly put it, "the House's adoption of the Select Committee's recommendations to find witnesses in contempt of Congress for their refusals to comply with Select Committee subpoenas" demonstrates that "the House views the Select Committee to be duly constituted and empowered to act under its authorizing resolution, even though the Select Committee has only nine members." *RNC*, 2022 WL 1294509, at *15. Indeed, the House has taken no action with regard to the subpoena for records involving the RNC, but Judge Kelly appropriately concluded that the House's actions with regard to other subpoenas indicated that the House believes that the Select Committee is duly constituted—which is, of course, a question of general applicability, not one with different answers for different subpoena recipients. As Judge Kelly concluded, "[i]f the Court reads § 2(a)'s 'shall' as mandatory, it would be 'interpret[ing] the Rule differently than . . . the [House] itself' and 'would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone.'" *Id.* (alteration in original) (quoting *United States v. Rostenkowski*, 59 F.3d 1291, 1306-07 (D.C. Cir. 1995)).

3

*Third*, Plaintiffs dismiss as "*dictum* at best" (Opp. 8) the Supreme Court's statement in *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995)—which this Court relied upon in *Bannon*, Mot. Hr'g Tr. at 114:22-115:3 (D.D.C. June 15, 2022)—that "legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.'"  *See also RNC*, 2022 WL 1294509, at *15 (citing *English v. Trump*, 279 F. Supp. 3d 307, 323 (D.D.C. 2018)).  As Judge Kelly noted, in rejecting the same argument that Plaintiffs make here, "[t]he Court may intervene if doing so 'requires no resolution of ambiguities.'  But a 'sufficiently ambiguous House Rule is non-justiciable.'"  *Id.* (quoting *United States v. Durenberger*, 48 F.3d 1239, 1244 (D.C. Cir. 1995), and *Rostenkowski*, 59 F.3d at 1306).  The language of the resolution, read in light of the actions by the Minority Leader of the House, created ambiguity for the House to resolve.  It has done so, and the Court should not reassess the House's interpretation of its own rules.

*Fourth*, Plaintiffs try to distinguish *RNC* by noting that Judge Kelly dismissed other allegations against the Congressional Defendants based on the Speech or Debate Clause and based on representations by Chairman Bennie G. Thompson to the recipient of the subpoena.  Neither ground, however, was relevant to Judge Kelly's resolution of the improper-composition issue, nor is relevant here.

## II.      The Subpoena to AT&T Serves a Valid Legislative Purpose

As Plaintiffs note (Opp. 10), House Resolution 503 established the Select Committee "[t]o investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex."  H. Res. 503 § 3(1).  The Select Committee is further authorized to recommend "corrective measures," including "changes in law, policy, procedures, rules, or regulations, that could be taken."  *Id.* § 4(c).  The latter task is dependent on the former: only with a proper understanding of the "facts,

4

circumstances, and causes" of the attack can Congress appropriately recommend measures to prevent its recurrence.  *Id.* § 4(a)(1).

As discussed in our opening brief, Mr. Stone reportedly participated extensively in events that preceded the January 6th attack.  Understanding his connections to other persons who participated in or planned events leading up to, and on, January 6th therefore serves a valid legislative purpose.  *See, e.g.*, *McPhaul v. United States*, 364 U.S. 372, 381 (1960) (rejecting challenge to subpoena where "the records called for by the subpoena were not plainly incompetent or irrelevant to any lawful purpose (of the Subcommittee) in the discharge of (its) duties" (internal quotation marks and citation omitted)).

And, contrary to Plaintiffs' argument, Congress need not "identif[y] any draft legislation that would be better informed by Plaintiffs' phone records."  Opp. 10.  As Judge Kelly held in *RNC*, "the Select Committee did not have to 'declare in advance' what legislation it may recommend based on the materials at issue to show that the subpoena has a 'legitimate object.'" 2022 WL 1294509, at *17 (citations omitted); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 509 (1975) ("The very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and into nonproductive enterprises.  To be a valid legislative inquiry there need be no predictable end result.").

Plaintiffs incorrectly suggest that "the only remedies" that could address the January 6th attack would be to establish "an arbiter of speech to restrict the content of social media" or to "provide better security."  Opp. 10-11.  For example, in a floor statement with which Chairman Thompson associated himself, Vice Chair Liz Cheney provided an illustrative, non-exhaustive list of possible legislative initiatives.  *See* 167 Cong. Rec. E1151 (daily ed. Oct. 27, 2021)

(statement of Chairman Thompson); 167 Cong. Rec. H5759 (daily ed. Oct. 21, 2021) (statement of Vice Chair Cheney).

### III.    The Subpoena to AT&T Does Not Violate the Fourth Amendment

Plaintiffs incorrectly attempt (Opp. 11-13) to shoehorn the subpoena to AT&T into the ambit of *Carpenter v. United States*, 138 S. Ct. 2206 (2018).  As discussed in our opening brief (Mot. 18-20), that case does not apply to the records the subpoena seeks.  Plaintiffs incorrectly assert that the subpoenaed phone records "contain location information noting the city where the call originated and the city of the person on the other end of the call or text message."  Opp. 13. Rather, with regard to location, the subpoena seeks only the subscriber's address—not where he may have been at any moment.  *See* Compl., Ex. 1 (ECF No. 1-1).

Nor do Plaintiffs provide (Opp. 13) any valid reason to delay this litigation by seeking discovery from AT&T regarding the phone data that would be disclosed.  They have had the subpoena since February, when AT&T sent a copy.  *See* Compl., Ex. 1 (letter from AT&T to Drake Ventures LLC dated Feb. 9, 2022) at 1.  Had they any legitimate questions about the relevant data, they could have contacted the company—or, for that matter, the Select Committee.

### IV.    The Subpoena to AT&T Does Not Violate Either the Stored Communication Act, 10 U.S.C. § 1039(b), or 47 U.S.C. § 222(c)(1)

As a threshold matter, Plaintiffs wrongly claim that the Select Committee had to identify a specific, enumerated authorization to seek specific types of information via subpoena.  *See* Opp. 17-19 (citing *NFIB v. Sebelius*, 567 U.S. 519, 535 (2012) and *New York v. United States*, 505 U.S 144, 157 (1992)).  The Supreme Court has recognized that the structure of the Constitution implies that "each House has power 'to secure needed information' in order to legislate."  *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020) (quoting *McGrain* v. *Daugherty*, 273 U.S. 135, 161 (1927)).  Indeed, the "power of inquiry—with process to enforce

it—is an essential and appropriate auxiliary to the legislative function." *Id.* (quoting *McGrain*, 273 U.S. at 174).  Therefore, "[t]he scope of the power of inquiry, in short, is as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution." *Barenblatt v. United States*, 360 U.S. 109, 111 (1959).

Thus, as long as a Congressional subpoena furthers Congress's power to enact legislation or appropriate funds—and Congress obviously may do either in order to combat an attack on its functions—it is valid absent some Constitutional or statutory constraint.  None of the statutes Plaintiffs cite—the Stored Communications Act, 18 U.S.C. § 1039(b), and 47 U.S.C. § 222(c)(1)—is such a constraint.

As explained in our opening brief (Mot. 22-25), the prohibitions on the disclosure of non-content information under the Stored Communications Act do not extend to disclosures to Congress, because Congress is not a "governmental entity" as defined in that Act.  *See* 18 U.S.C. § 2711(4) (defining "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof").  Although Plaintiffs object that this definition deviates from the "common sense meaning of that term," (Opp. 20) the Supreme Court has made clear that "[w]hen a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." *Digit. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 776 (2018) (internal quotation marks and citation omitted).

Plaintiffs have no good response to the fact that, in *Hubbard v. United States*, 514 U.S. 695 (1995), the Supreme Court interpreted the identical phrase "department or agency of the United States" in a different statute, 18 U.S.C. § 1001, in an identical manner—to exclude entities outside of the Executive Branch.  Instead of conceding that the same phrase should be interpreted the same way here, Plaintiffs propose a clear-statement rule that—in contradiction to

7

the broad scope of the Congressional power of inquiry—would have courts assume that Congress intends to restrict its own investigatory powers unless Congress expressly states that it does *not* wish to do so.  But Plaintiffs provides no reason to justify such an unprecedented rule. And the fact that Congress acted to amend 18 U.S.C. § 1001 in the wake of *Hubbard* indicates that Congress knows the consequences of using the phrase "department or agency of the United States," and knows how to revise that phrase, yet has not done so in the context of the Stored Communications Act.

Plaintiffs attempt to sow doubt (Opp. 18) by quoting a law review article, Aaron R. Cooper, *Congressional Surveillance*, 70 Am. U. L. Rev. 1799, 1833 (2021), that asserts in the passage Plaintiffs quote that it may be "ambiguous" as to whether the Stored Communications Act allows Congress to obtain content information.  But as we noted in our opening brief (Mot. 24-25), the article's author sees no ambiguity as to the relevant question here: whether the Act allows Congress to obtain *non-content* information via subpoena.  *See* Cooper, *supra* at 1834 ("Even the most conservative reading of the SCA, as it now stands, permits Congress to obtain all forms of non-content data through its subpoena power.").

Plaintiffs are similarly misguided in suggesting (Opp. 16-19, 21-22) that subpoena compliance by AT&T would violate 18 U.S.C. § 1039(b) and 47 U.S.C. § 222(c)(1).  Plaintiffs did not even mention these statutes in their Complaint and cannot raise them now.  *See, e.g.*, *Hamilton v. United States*, 502 F. Supp. 3d 266, 278 (D.D.C. 2020) ("A complaint may not be amended by the briefs in opposition to a motion to dismiss.") (cleaned up).  In any event, Plaintiffs are wrong.

Section 1039(b) is a provision of the Telephone Records and Privacy Protection Act of 2006, which is a separate law from the Stored Communications Act.  *See* Pub. L. No. 109-476,

§ 3(a), 120 Stat. 3568.  Section 1039(b) exempts transfers of phone record information where "otherwise permitted by applicable law."  As discussed above, *see supra* at 4-6, the Constitution allows Congress to obtain information by subpoena in furtherance of a valid legislative purpose. The "applicable law," in other words, is the Constitution itself.  Thus, to the extent the subpoena is otherwise valid, Section 1039(b) poses no barrier.

As for 47 U.S.C. § 222(c)(1), its proscriptions apply "[e]xcept as required by law." Compliance with a valid subpoena, of course, is required by law, and thus Plaintiffs' claim fails.

## V.     The Subpoena to AT&T Does Not Violate the First Amendment

Finally, Plaintiffs' First Amendment claim (Opp. 22-24) fails.  As we stated in our opening brief (Mot. 20), typical First Amendment balancing is not warranted here, because a valid Congressional subpoena is involved.

Even if any such balancing were appropriate, Plaintiffs' claim would still founder.  The Select Committee investigation into the January 6th attack is plainly a "compelling justification," (Opp. 22) for the information that the Select Committee seeks.  While Plaintiffs complain that the Select Committee seeks information about their "free speech and association activities," *id.*, that would be true of *any* Congressional request for an individual's communications—and does not suffice to defeat it.  A thorough investigation into the causes of a politically motivated attack will inevitably analyze how individuals associated with each other.  That some "colleagues, business prospects, former clients, and associates" are allegedly reluctant to speak to Mr. Stone, *id.* (quoting Compl. ¶ 65), does not come close to meeting the standard required to demonstrate a valid associational injury.  *See* Mot. 21.  And even if it did, it would be outweighed by the Select Committee's compelling interest in investigating the attack.

## CONCLUSION

The Complaint should be dismissed in its entirety.

Respectfully submitted,

/s/ *Douglas N. Letter*
DOUGLAS N. LETTER
  *General Counsel*
TODD B. TATELMAN
  *Principal Deputy General Counsel*
ERIC R. COLUMBUS
  *Special Litigation Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
5140 O'Neill House Office Building
Washington, D.C.  20515
(202) 225-9700
Douglas.Letter@mail.house.gov

John A. Freedman[*]
Paul Fishman[*]
Amy Jeffress[*]
David J. Weiner[*]
John M. Hindley[*]
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington,  D.C. 20001
(202) 942-5000
John.Freedman@arnoldporter.com
Paul.Fishman@arnoldporter.com
Amy.Jeffress@arnoldporter.com
David.Weiner@arnoldporter.com
John.Hindley@arnoldporter.com

SHER TREMONTE LLP
Justin M. Sher[*]
Michael Tremonte[*]
Noam Biale[*]
Maya Brodziak[*]
Kathryn E. Ghotbi[*]
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600
JSher@shertremonte.com
MTremonte@shertremonte.com
NBiale@shertremonte.com
MBrodziak@shertremonte.com
KGhotbi@shertremonte.com

10

August 19, 2022

---

* Appearing pursuant to 2 U.S.C. § 5571(a).

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter